All right, counsel. Good morning. We have the Golson matter now, and Mr. Conrad. Go ahead, sir. Good morning, Your Honor. Your Honor, may it please the Court, Mr. Bloom, I guess it's actually good afternoon. Is it? Really? It's afternoon now. Well, if I could reserve three minutes at the end, Your Honor. Yes, that's fine, sir. Go ahead. Very well. Your Honor, I stand before you this afternoon on behalf of Mr. Golson to ask you to find that the district court erred when it failed to suppress the evidence that was seized against Mr. Golson in this case. Does Golson have standing to object to that? Yes, ma'am. I believe he does. And I think that even in taking a look at the government's brief, if you will, I believe that even the government cites a case, and I found it kind of interesting in their case, that they cited a case that actually would lend to that fact. They actually argued that they do not have standing, and yet if you take a look at page 15, they cited a case at the very bottom indicating that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names. So I thought it was interesting they actually cited that case. Well, it was addressed to his son. His son is not a fictitious name. His son was living in the building. Actually, Derrick Brown, his son is also Corey Golson. The name on the package was for Derrick Brown. So I would argue, Your Honor, that in fact he does have standing. I believe, though, that what happened in this case is frankly that the district court just missed the mark. The analysis that the district court used had nothing to do with Rule 41 that we argued. I think in this case, Rule 41 becomes the standard by which the warrant has got to be applied. Rule 41 only applies if we determine that, based on our analysis, this was a federal proceeding action, however you want to describe it, right? Yes, sir. Okay. So tell us why. I mean, obviously, Corrado is involved, but it would appear, right, that there are both federal agents involved and state law enforcement involved. Tell us why the lower court's determination that it was a state-run affair, if you will, is wrong. Yes, Your Honor. I'll tell you. When I look at this, and we've looked over the case law on this, it's with the amount of involvement that the federal government had, the federal agents had in this case, there is almost no way to suggest this had anything to do with a state case. Everything about the case had to do with the federal investigation. The package itself was seized down south by federal agents. It was shipped up to Mr. or Inspector Corrado. He's the one that examined the package. He's the one that called in the canine sniff. He's the one that sought the warrant initially for the package to open it up. He's the one that directed the entire operation, and the record is very clear on that. And he says it's his investigation. From the inception, this was going to be a federal case, and it ended up being a federal case. So the only involvement was Inspector Corrado bringing in the state actor, bringing in the trooper to help him out. And the only thing the trooper was going to do, the trooper brought over a dog days earlier, and then on the 26th when this all went down, they were going to be assisting, but it was his, it was the inspector's investigation the whole way through. So, Your Honor, the fact that the court went on to say that this was somehow a state warrant kind of surprises me. He said that in the warrant itself, the trooper mentioned cell phones in addition to the drugs. He mentioned cell phones, and the court found that because he mentioned cell phones, somehow none of that makes this a state case. Well, let me ask you this. Are you making a twofold argument that, number one, it's federal, therefore Rule 41 applies? And if Rule 41 applies, we have to find that the warrant was obtained from a court of record, and here it's obviously not a court of record because if you look at 301, magisterial district judges are not parts of a court of record. That's correct, Your Honor. And in the Commonwealth of Pennsylvania, a magisterial district judge, it's not a court of record. They don't even have to be attorneys. And in this instance, DJ, I'm sorry, Magisterial Judge Martin is not a lawyer even. But magisterial judges issue search warrants all the time. Yes, sir. In Pennsylvania. They do issue search warrants. For state investigation. Yes, sir, they do. The interesting thing about this particular case, what happened here, is that this is a different kind of warrant. This is an anticipatory warrant. And because, in this instance, Rule 41, we're going to argue and we argue, clearly does apply. Under the federal law, there's a heightened standard when it comes down to anticipatory warrants. And because of that, I think that's exactly why the law was written the way it was, so that you have someone that is able to analyze what's being brought before the court as to whether or not it meets the proper criteria to issue that kind of warrant. And we would argue in this case that that clearly was what happened here, that the local magistrate, the district justice, could not appreciate what was being asked for. Here they're asking for an anticipatory warrant. That warrant has to have certain triggering events in it to have proper safeguards. And I know we've cited that in our brief, you know, some of the safeguards, obviously, that must be in place. Are you asking that we formally adopt the factors set out in Bedford? I suppose the argument the other way would be that the factors set out in Bedford were dicta. Are you suggesting that we formally adopt those and adopt those as the factors that should apply in this instance? Absolutely. Your Honor, the case that we cited in particular was the Bingham, I'm sorry, I believe it was the Bingham case that listed the factors that the court was to look to. In the Bingham, was it the Bingham case? Yeah, Bingham. They said that it has to be treated with more caution, that they have to incorporate the affidavit of probable cause. It has to be attached to the warrant. It gives the citizens affected a reasonable explanation of the grounds for the search. It explicitly ties the time of the execution and the conditions of the triggering event into the warrant itself. It gives the officers limited time to perform the controlled delivery. It gives the officers reasonable time to perform the controlled delivery to avoid scaleness. And when the probable cause did win actually exists. And here this warrant was written so poorly that one would not know when the triggering event actually occurs. The warrant states that there are 20 pounds of marijuana that are about to enter this residence. And it's going to be part of a controlled delivery. What's a controlled delivery? The fact that they took most of the marijuana out, I frankly don't find of any great concern. They don't want to send that marijuana back into the community. They have the marijuana they took out. They are sending a decoy in with probable cause to know that the package contained marijuana. And I frankly did not find the fact that the warrant talked about 20 pounds of marijuana and most of that marijuana was sitting in the evidence locker disturbing. Well, Your Honor, I appreciate the court's thought on that. Except for one thing, I think the government actually argues that that's routinely done, that they take the marijuana out of the package. Except for one thing. If you read through Trooper Overcash as he is cross-examined or as he was testifying at the hearing, the suppression hearing, he said that Trooper Overcash said that he sends the whole thing. He himself, when he does his, his state warrants or his state controlled deliveries, he sends the whole package in. I think it's actually found that the package. Well, that's ironic. But of what purpose, what use is that? I mean, I think we all, we're district judges, we all could take judicial notice of the fact that this happens all the time. Yes, Your Honor, except for this. That warrant didn't go on to say anything more about the, when does the triggering event occur in that warrant? When does probable cause exist? And when the magistrate signs the warrant, it has to happen at that time. It has to be a date certain in the future or time specific when probable cause will exist in order for this anticipatory search warrant to hold up. We don't know when that's going to be. Well, we know there's a beeper in the package. When the package is opened, it will beep. Yes, ma'am. And when they get the beep, then they know that the condition has been satisfied. Yes, ma'am. We do know that now. But that judge, the district magistrate that saw this, there was no way he could have known that. That warrant doesn't mention that at all. It simply says that there were 20 pounds of marijuana in a package, and it was going to be delivered. It was taken out of the stream of the flow of mail, and now it's being placed back in the stream by the officers. And it's going to beep. How exactly does marijuana beep? Well, there's a beeper in it. I mean, that's pretty obvious. Yes, ma'am. I understand, but there's nothing in the warrant. I've got a question going back further. The fact that the preliminary investigation here was done by a postal inspector rather than, say, the DEA or the FBI, and the postal inspector knew there was a suspicious package but had no idea what was in that package, and does not the fact whether this is a state or a federal prosecution depend in large part on what is in the package? And when you find out that there's 20 pounds of marijuana in the package, they decide, well, this is getting sizable. This ought to be a federal prosecution. If there were two ounces of marijuana in the package, I think he would have had the opposite choice made, that this will be a state proceeding. And so the fact that this is federal postal inspectors instead of federal narcotic DEA inspectors, to me does not add any significance to whether this was ultimately going to be a state proceeding or a federal proceeding. Well, Your Honor, I don't know of any body of law that says what's in the package makes it federal versus state. The simple fact that- There's no body of law. There's procedure. There are accepted ways of how the state and federal prosecutors working together decide, this will go to the feds, this will go to the state. And I believe that the amount of drugs involved is an important factor in that. And they could have made that determination. I believe that whenever the agent opened the package and found out how much was there at that moment in time, he could have made that determination, said, I'm going to turn this over to the state. But instead he didn't. He took control, kept control, and when all the evidence was seized from the home, that agent collected the agent and kept it himself. So it's clear under these facts of this case, this was a federal investigation and was going to remain. So are you challenging the sufficiency of the warrant itself, or are you claiming that you're entitled to suppression because the warrant was issued by the wrong authority? Your Honor, both.  It was examined under Rule 41. Rule 41 applies in this case because it's entirely a federal investigation. The only way it became state was by bringing in the trooper just to simply go get a warrant. And the other interesting thing that I want to point out to the Court is, is that the investigating trooper, Inspector Corrado, he knew about Rule 41. He had it in his earlier warrant that he had given to the magistrate when he got the warrant to open up the package in the first place. He is a seasoned inspector, and he knows full well that Rule 41 should apply. Just one last question. Is part of your argument that along the lines of what Corrado knew and didn't know, that Agent Corrado used the federal magistrate judge in the first instance, but because of, I guess it was unavailability, used the magisterial district judge in the second instance? Your Honor, clearly from the record, there was no problem with availability. And I was very specific in my questioning of the inspector and trooper Overcash at the hearing. There was no problem with availability. Judge Smyser was available in the morning. The magistrate judge was available when he signed the first federal warrant, or the first search warrant for the package. And later on that afternoon, he was still available. No question at all about availability. Yeah, of course. Let me ask you one more question then. Assuming there was a violation of Rule 41, why is suppression appropriate here? Your Honor, the court pointed out in a number of different cases here, and certainly I think we've cited those, that they've got to follow these rules. The rules are put in place for a reason. Under the federal system, it outlines the basis for the Fourth Amendment violation here. There's no Fourth Amendment violation. I mean, we're talking about a Rule 41 violation. Which underpins or guides, if you will, the federal inspector and what his duties are supposed to be. And he knew what they were, and he shirked those responsibilities, Your Honor. He knew what they were because he did it earlier in the morning, and then in the afternoon he shirks that because he didn't want to create additional paperwork. That's also outlined in the testimony. He didn't want the additional paperwork. So you don't shirk federal law simply because you don't want the additional paperwork. You follow the law. Okay, thank you so much. We'll hear from you on rebuttal. Mr. Bloom. Good afternoon. Please, the Court. My name is Darrell Bloom. I represent the United States of America. First, addressing the first issue, whether or not it's federal in character, I would disclose to the Court that it is not. In fact, one of the things that's been pointed out by Judge Roth is, in fact, that what we have here is after they open the package, they find approximately 19 pounds of marijuana. Not something that would be tantamount to a federal prosecution. But we have more indicia that it's not a federal character. Is that what we should look at? Excuse me, Your Honor? Is it the amount and our experience that we should look at and say, this is federal or this is state, or should we look at the actions of the actors involved? I think you look at both. I think you look at a totality of all the circumstances. And here, let's go from there. At the time that they open the package, they find approximately 19 pounds of marijuana. At that point, there's an anticipatory search warrant. Once that's executed, they identify themselves not as federal agents but as state police. They go in. The Pennsylvania State Police did the interview of the individual. They did the charges. In fact, we have state charges in this particular case. We had a preliminary hearing in this particular case. All of it, there's suggestions that this would have been a state case, but for the fact that they ultimately find 804 packets of heroin, in addition to raw heroin, substantial quantity of packaging, sawed-off shotguns, other shotguns, other firearms, ammunition. At the point that the package was opened, I think there's very clear indicia that it would have been a state case. It does not make it federal in character. But I have more. What factors should we be looking at? Is there any guidance that we have in our jurisprudence or elsewhere? I think there are a number of factors to look at. In kind of the case, they talk about federal in character. In fact, the Supreme Court in Byers said that mere participation does not render it a federal undertaking, and that's what we have here. I think even if we look at some of the factors, of course, the weight would be substantial, whether or not there's a specific target, whether or not the type of controlled substance it is. I think there's all factors, and I don't think that you can be pigeonholed to say, well, this is the limited number of factors. I think you have to look at everything. Look at, in addition, as what you said, Judge, is the fact that you also look to the character. What did they do, the actors in this particular case? The reason that the postal inspectors were involved is they had to be. Postal mail can only be opened in search warrants obtained by federal postal inspectors. Not even other federal law enforcement agencies. It has to be postal. So we get to that, and I think that the other thing, too, is I think we rely on the district court. And I understand that the district court's decision is somewhat scant in this regard. It was an issue that was raised at the very end of the suppression hearing itself. But I think the district court did make a factual finding that this was a state case, that it was not federal in character. If we disagree with the district court, would you concede that there would be a Rule 41 violation? If the court were to held that there would be federal in character, I think that that satisfies the first part. The next is the court of record. And I know there's actually some conflict about whether or not it's a court of record. And I say that because 42 Pennsylvania Consolidated Statutes, 321, says that all courts of the Commonwealth of Pennsylvania. Yeah, but 301 is pretty clear. Come on now. I think it is pretty clear, and I think you're right. But arguendo, if I were to take your assumption that it's federal in character and that it's not a court of record, I think the remedy does not need to be suppression of the evidence. What would be the appropriate remedy? I think the court considers it a technical violation. I don't think suppression would be appropriate. I think it's similar to Hall where you have a return of a search warrant. And the reason I say that is because there's no violation of the fundamental fairness, due process, the Fourth Amendment. There is probable cause clearly in this case. And so I don't think you get to the extreme remedy of suppression in a case. We're talking about principles of fairness. And I think that to – Well, what's the purpose of rule – I'm just trying to think. Because based on what you've just said, right, I would never find that there should be any real remedy to a Rule 41 violation, right? Because if I'm looking at the principles of fairness and – or more lofty goals, I would never get to suppression, right? Because I'd say, well, you know, everything was followed. It was just followed by the wrong court. You know, there were the correct determinations made, probable cause, et cetera, so we can let it go. That seems a little odd to me. Well, Your Honor, I would respectfully disagree with the court. I think that there could be cases where a violation of Rule 41A would result in suppression, in cases of bad faith, for example. And I think Byers somewhat spoke to that. Byers was more pointed toward that there was some bad faith. They didn't address, really, a good faith exception because they said they really did it. It was with a tax stamp. So it really was a federal crime. They brought in the federal agent knowing that and with that knowledge. And I think there's some – at least indicia that there's some bad faith. That's not what we have here. In fact, just the opposite. In this particular case, we have the state police trooper actually testified that he acted in good faith, that he had done this before, that this is who he goes to, the local magisterial district judges, to obtain these. And what's the reason for the change from federal magistrate judge to magisterial district judge? I mean, right? I mean, one was available, went to the magistrate judge in the first instance, got what they needed. It's a continuing investigation. Wouldn't you just go back? Well, there certainly wasn't a – there's an assumption that's made that the federal magistrate judge would have been available. Most likely, I'm not certain of that because it wasn't done in this particular case. At the time that it was opened and all parties realized it was marijuana, the Pennsylvania state police trooper went to obtain the anticipatory search warrant from the local magisterial district judge. There is evidence in – Is the test that was announced by the Second Circuit in Burke in terms of what remedy should be provided for a Rule 41 violation, is that applicable here in the Third Circuit? I think there – Are you familiar with the Burke test? I beg your pardon? Are you familiar with the test I'm referring to? In some respects. Burke held that violations of Rule 41 alone should not lead to exclusion unless there was prejudice in the sense that the search might not have occurred or there's evidence of intentional and deliberate disregard of a provision in the rule. In fact, and just to further that, and I would note that there's no prejudice. And further, one of the things that was said is that it's not constitutionally significant. And it's – again, it's similar to Hall in that regard, a Third Circuit, of course, where it's not constitutionally significant, the violation of Rule 41A in this case. We do have probable cause. We do have a neutral and detached magistrate. We don't have any way in which the authorities, either federal or state, violated anything in terms of being untruthful, providing deliberate information. In fact, there was nothing that was deliberately untruthful. There wasn't even anything that was incorrect in the anticipatory search warrant. And again, I would point that the reasons really are to prevent the violations of the Constitution by circuitous and indirect methods. That's really the reason. And I would note further that one thing that is significant, that Rule 41 is not the exclusive authority to provide for search warrants. And that's clear. And how do we know that's clear? We know it's clear because district court judges are not even referenced in Rule 41. In fact, they are referenced nowhere in the rules. But clearly, district court judges have the authority to issue search warrants. In fact, they're empowered. And it's uniformly assumed that the federal district judges have the power to do so. One of the things that was addressed, too, by counsel was that there's a different standard for an anticipatory search warrant, and that's just absolutely not true. Anticipatory search warrants are held to the same standard of probable cause. That's the Supreme Court's decision in Grubbs. You have to have the three findings, that it's now probable that contraband will be found at the location at the time the search warrant is executed. In this case, the triggering event was very clear as well. The triggering event is as stated when the package is accepted, which in parentheses is taken inside the residence. That's the triggering event. And obviously the next part of the beep is not the triggering event, but that was stated in there as well. That it will emit the package, not the marijuana, it says the package, will emit an audible beep when the package is opened. And at that point is when they executed the search warrant itself. It's, again, as I would agree with Judge Roth, what's contained in the package is not material. What's material is that the package was accepted. And that's exactly what we have here. There was sham as well as a small quantity of the controlled substance that was delivered in that. And there's obvious reasons for that. Of course, there's reasons of you don't want it to reach the street, you don't want it to be automatically destroyed. Yeah, you're right. That's not particularly persuasive. You can move on to another one. Okay, and one of the other things that the court asked about is standing. And certainly standing is an issue in this case. And, of course, the court is very familiar with Petaway, one of the things which cites Villarreal. Here in this case, we have something very different. And why it's different is as follows. Have you waived standing? I beg your pardon? I said have you waived the argument? The government did not waive standing. Challenging. In fact, below, in fact, I don't believe that that's something. I think there's case law that supports that that's not something that the government would even be able to waive. There's case law that indicates that we couldn't essentially waive that. But what's here is we have a package that's delivered to an individual, Derrick Brown. There's no indication that that's the alter ego of Corey Golson. And I'm just going to refer to him as Corey Golson Sr. They're not actually junior and senior, but just so the court's aware that it's the father that I'm referring to. No indication that's his alter ego. But we have the package being accepted and opened by someone else. It's not he wasn't the individual that sent the package. His name was not listed on the package itself. He didn't sign for the package. And, again, there's no evidence that it's the alter ego. So I would say that the defendant does not have standing. If the court were to find standing, getting into the next issue that they raised, the delay, I would submit to the court that the delay was reasonable. We're talking about a Friday and two days of weekends, a Saturday, Sunday. It's not unreasonable based upon all the precedent that we have in this particular case. Gill, Lux, Mayomi, they talk about weekends and leave not being unreasonable periods of time. You raised the standing issue in the district court, right? We did. The standing issue was not raised at the district court. We assumed for purposes of the proceeding that there was standing. So doesn't Stern preclude you from making the argument now? I don't believe so, Your Honor. Again, I think that there's support that standing is always something that exists. Even if the government were theoretically to say we're not going to address standing, it still would exist at the appellate level. And that would be the government's position. I think there's clearly support for that as well. And, again, I think that in terms of this standing, do we want society? One of the things that was addressed in the court's decision is do we want society to recognize this in this particular case? Is there an expectation of privacy? But is that reasonable? Is it reasonable to have an expectation of privacy as something that's not addressed to you, something that's addressed to someone else where there's no evidence? And, again, it's his burden where there's no evidence that it's his alter ego and there's no evidence or actually there is evidence here that was delivered to another who accepted it, indicated that that's their name, signed for it, and further took possession and went further even from possession and actually opened the package itself. Again, I think based upon that there would be no standing. And getting into the argument in terms of the delay, even if the court were to find the delay, we still have enough under the Supreme Court's decision in Florida v. Harris because we have the probable cause that was based upon the dog. So just the dog hitting, even if they had not opened that package, I think there would be probable cause that led to the anticipatory search warrant that would be sufficient. And, again, with the anticipatory search warrant, I think the district court below made a determination that this was not federal in character, that this was a state case, therefore it was not a violation. That's at the appendix at 9 where the court referenced that. Again, it does not offend the concepts of fundamental fairness. It does not offend the Fourth Amendment concerns. It's a technical violation. And, again, I think that here there's no harm to the defendant. There's certainly no prejudice. And what's clear is you can't make the argument that the prejudice is the fact that the evidence is used because that would be in every single case. Here, otherwise, there is no prejudice to the defendant. I believe that essentially is the government's argument. We don't have a silver platter doctrine issue, and the mere participation, again, based upon the Supreme Court's decision does not render this federal in character. Did Agent Corrado, he was in on the arrest, yes? He was there that day. He did not make the arrest. That was the Pennsylvania State Police. Right, okay. And who also did the interview and followed up and filed charges. Okay. No questions. Okay, thanks so much. Thank you, Your Honor. Go ahead, sir. Your Honors, I appreciate what counsel had to say, his arguments. However, I respectfully disagree with regard to this being a technical violation. It's more than a technical violation in this case. First of all, again, I want to point out that we believe that Rule 41 would apply, based on the entirety of this investigation. What about his bad faith argument? In the absence of bad faith, why should the technical violation, as it's been equipped, lead to suppression? Your Honor, bad faith in this particular instance, the officer, Inspector Corrado, knows the law. He knows that he has to follow Rule 41. He's done so in his earlier warrant that he did. When he enlists the help of this state trooper, it's still his investigation. It's clear from the record. He claims it's his investigation. So he has to then follow 41 when he enlists the trooper. So this isn't a technical violation. In his own words, he didn't want to create more paperwork. He's snubbing his nose at what the rule requires. Okay, so you concede then if he did, as you've done the paperwork, we'd be in the same place, though, right? I'm sorry, I'm going to fall. Well, the package would have been intercepted, and it would have led to the same set of circumstances that we find ourselves in now. Except for one problem, and I think it goes back to what Judge Manisky was asking about. I disagree with counsel. There is a heightened standard. Under the Bingham case, issuing magistrates must treat anticipatory warrants under 41 with more caution than traditional warrants. So there's more there. And if you take a look at this warrant, no learned, and I don't mean to be disrespectful to D.J. Martin, but no learned counsel would have seen a triggering event here. This thing is open-ended. How does one know when probable cause occurs? Is it when a package arrives? Who's going to accept the package? Is it okay if a child accepts the package or a maid accepts the package? We don't know. I thought you went through this with Judge Roth, with the beeper. Even if the beeper's out, let's say the beeper is of no consequence. Still, there's still nowhere in that last paragraph of that warrant that says, when will this triggering event occur? So I think it would still fail. It would still fail on an analysis. I'm sorry. I thought that was me beeping. Wow. It's a great teaching moment. It's not me beeping then. Your Honor, only that the analysis then would be, I'm sorry, should I continue? Oh, yeah. Just that the analysis, I'm sorry, would be different. If we're under Rule 41, the analysis would be a higher scrutiny. It goes to show why the law would require a magistrate as opposed to a district justice, because they would recognize the heightened standard of that anticipatory warrant, and that warrant does not have enough in it. Following the Bingham precepts, it would fail. It would fail on probable cause. It's a two-fold argument, as the Court pointed out earlier. Thank you. Thanks for your time. Okay. Thanks so much. The case was certainly well-argued, well-briefed. We appreciate it, and we'll take it under advisement.